## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MARK MEGALLI,** | : | **MOTION TO VACATE** |
| **Movant,** | : | **28 U.S.C. § 2255** |
| | : | |
| **v.** | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:13-CR-0442-RWS-AJB-1** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | **CIVIL FILE NO.** |
| | : | **1:15-CV-1433-RWS-AJB** |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his

federal sentence entered in this Court under the above criminal docket number.  The

matter is before the Court on the motion to vacate, [Doc. 40], Respondent's response,

[Doc. 47], Movant's reply, [Doc. 52], and Movant's supplemental brief, [Doc. 63].  For

the reasons discussed below, Movant's motion to vacate and a certificate of

appealability (COA) are due to be denied.

## I.   <u>Background</u>

The United States Attorney for the Northern District of Georgia charged Movant

with conspiring to commit securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff

and 17 C.F.R. § 240.10b-5.  (Information, ECF No. 1.)  On November 14, 2013,

represented by Paul Monnin, Movant pleaded guilty. (Guilty Plea and Plea Agreement,

ECF No. 3-1; Plea Hr'g Tr., ECF No. 9.)  On July 9, 2014, the Court imposed a twelve

month and one day term of imprisonment.  (J., ECF No. 29.)  The record does not show

that Movant appealed.  On April 29, 2015, Movant filed a counseled § 2255 challenge

to his conviction.  (Mot. to Vacate, ECF No. 40.)[1]

## II.   <u>28 U.S.C. § 2255 Standard</u>

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a

federal sentence that was imposed in violation of the Constitution or laws of the United

States or was imposed by a court without jurisdiction, exceeds the maximum sentence

authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  It is

the movant's burden to establish his right to collateral relief, *Rivers v. United States,*

777 F.3d 1306, 1316 (11th Cir. 2015), *cert. denied*, _ U.S. _, 136 S. Ct. 267 (2015), and

collateral relief is limited.  "Once [a] defendant's chance to appeal has been waived or

exhausted, . . . we are entitled to presume he stands fairly and finally convicted" and

"a collateral challenge may not do service for an appeal."  *United  States v. Frady*,

---

[1]      The Court notes that the Securities and Exchange Commission (SEC) brought a civil enforcement action against Movant, and that final judgment was entered in that action on December 17, 2015. J., *Sec. & Exch. Comm'n v. Megalli*, No. 1:13-cv-3783-AT (N.D. Ga. Dec. 17, 2015), ECF No. 66; *see also Sec. & Exch. Comm'n v. Megalli*, 157 F. Supp. 3d 1240 (N.D. Ga. 2015) (ruling on motions for summary judgment in 1:13-cv-3783).

456 U.S. 152, 164-65 (1982).  Accordingly, a defendant "must assert all available claims on direct appeal," *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004), and claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent (1) a showing of cause for the default and actual prejudice or (2) a showing of a fundamental miscarriage of justice or actual innocence, *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

"[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . . " or that the matter was not raised because of ineffective assistance of counsel.  *Lynn*, 365 F.3d at 1235; *see also Reece v. United States*, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that, absent an "objective factor external to the defense" as cause, the movant must show that the default was caused by ineffective assistance of counsel (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted)).  If a petitioner shows cause, he also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece*, 119 F.3d at 1467 (emphasis in original) (quoting *Frady*, 456 U.S. at 170) (internal quotation marks omitted).  To show actual innocence, a movant must, "with new

AO 72A
(Rev.8/8
2)

reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

## III.    **Discussion**

### A.    **Additional Background**

As indicated above, Movant pleaded guilty to conspiring to commit securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5. (Information; Guilty Plea and Plea Agreement.) To the extent permitted by federal law, Movant agreed to a waive his right to appeal and collaterally attack his conviction and sentence, with exceptions that are not applicable here. (Guilty Plea and Plea Agreement at 12.) Movant signed the agreement and stated that he voluntarily agreed to its provisions, including the appeal and collateral review waiver. (*Id.* at 14-15.)

4

At the plea hearing, the Court explained to Movant the trial rights that he would be giving up by pleading guilty, and Movant stated that he understood.  (Plea Hr'g Tr. at 4-7.)  In open court, the government reviewed the terms of the plea agreement, including the appeal and collateral-review waiver, and Movant informed the Court that he understood the terms of his plea agreement.  (*Id*. at 9-10.) The government set forth what the government would be required to prove as follows.

> [T]he Government would be required to prove beyond a reasonable doubt, first, in connection with the purchase or sale of securities, the Defendant employed a device, scheme or artifice to defraud, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon persons; second, the Defendant acted willfully, knowingly and with the intent to defraud; and third, the Defendant used or caused to be used any means or instrumentalities of transportation or communication in interstate commerce or use of the mails in furtherance of the scheme.

>  . . . . In order to satisfy the first two elements of that test that I just described in an insider trading case, the Government is required to prove, first, that the original tipper, in this case Richard Posey, possessed material nonpublic information regarding a publicly traded company; second, the original tipper, Rick Posey, disclosed this information to the intermediate tippee, in this case Eric Martin, who disclosed it to the remote tippee, in this case [Movant]; third, the remote tippee, [Movant], traded in securities on the basis of the information; and fourth, the original tipper, Rick Posey, breached a fiduciary duty to the source of the information by disclosing it to the intermediate tippee, and the remote tippee, [Movant], knew that the original tipper had violated a fiduciary duty by providing the information to the intermediate tippee.

5

Now, in the Second Circuit there's currently an issue percolating[2] that's related to some of the insider trading prosecutions up there as to whether there is a fifth element that the remote tippee in [Movant's] position must also know that the original tipper received a personal benefit in exchange for disclosing the information to the intermediate tippee. The Government's position is that this element is not required. Nevertheless, the parties have discussed it; and the Government's position is that as a factual matter – first, as a legal matter, it's not required. As a factual matter, if it was required, the Government could prove it based on circumstantial evidence that [Movant] knew or consciously avoided the knowledge that Martin was meeting with friends and contacts at Carter's and had friendships with one or more persons at Carter's, his former employer. Finally, just so the Court is aware, conscious avoidance or deliberate ignorance is sufficient to articulate the knowledge and intent elements under this, under the securities fraud statutes that we're discussing.

(*Id*. at 12-14.)  Movant stated that he understood.  (*Id*. at 14.)

The government reviewed what the evidence would show should the case go to trial as follows:  (1) Mr. Posey disclosed insider information to Mr. Martin in exchange for reciprocal stock tips on other public companies, future networking opportunities, friendship, and other tangible and intangible benefits and (2) Mr. Martin provided the insider information to Movant, who used the information to sell and short Carter's common stock – knowing that Mr. Martin had recently left Carter's and was meeting,

---

[2]      The issues percolating in November 2013 were decided in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), *cert. denied*, _ U.S. _, 136 S. Ct. 242 (2015), and *abrogated*, *Salman v. United States*, _ U.S. _, _, 137 S. Ct. 420, 428 (2016).

6

speaking, and socially interacting with a Carter's insider[3] and knowing or consciously avoiding that Mr. Martin was obtaining the information from the Carter's insider in breach of the insider's duties.  (*Id.* at 17-19.)  Movant did not present any significant disagreement on the facts.[4]  (*Id.* at 22-25.)

The Court reviewed with Movant his appeal and collateral-review waiver, and Movant stated that he understood.  (*Id.* at 28-29.)  The Court inquired whether Movant was satisfied with his counsel and whether he had received enough time to discuss the case and the decision to plead guilty, and Movant confirmed to the Court that he had.  (*Id.* at 30.)  The Court accepted Movant's guilty plea.  (*Id.* at 31.)

In his sentencing memorandum, Movant referred to the then ongoing litigation in *Newman* and pointed out that he, Movant, had waived the possibility of requiring the government to prove (1) a breach by and personal benefit to the insider and

---

[3]      The government stated that the insider, Posey (whose name had been unknown to Movant) and Mr. Martin had developed a personal and professional relationship which included travel, golf outings, lunches, work events, and social events, and which continued after Mr. Martin left Carter's.  (Plea Hr'g Tr. at 18-19.)

[4]      *See Megalli*, 157 F. Supp. 3d at 1248 ("[Movant] concedes that in his guilty plea he admitted that he made trades on 'the basis of, in whole or in part, certain material, non-public information provided by Eric Martin . . . knowing and consciously avoiding the knowledge that the material, non-public information had been obtained by Martin from a Carter's insider in violation of the insider's duties of trust and confidence to Carter's.' " (citation omitted)).

7

(2) Movant's knowledge of that benefit and breach.  (Mov't Sentencing Mem. at 57-60, ECF No. 26.)  Movant asserted that "the government's ability to prove knowledge of benefit when Martin concedes he never identified Posey either by name or even by job title . . . is hardly a foregone conclusion, which means it should factor as a mitigating circumstance in the Court's assessment of a reasonable sentence in this case." (*Id*. at 60.)

At sentencing, the Court granted a one-level downward variance requested by the government, and Movant's guidelines range was calculated at forty-one to fifty-one months.  (*See* Sentencing Tr. at 2, ECF No. 31.)  The government requested a sentence at the low end of the guidelines, stating, among other things that Movant had made a "tremendous demonstration of acceptance of responsibility."  (*Id.* at 4.)  Movant, through counsel, admitted – "[c]onscious avoidance . . . is equally as culpable as actual knowledge but I'm here to tell you that we also have actual knowledge in this case" – and then asked the Court to consider that jail time was not the end-all of deterrence as he was facing significant liability in the SEC action ($3.17 million in disgorgement) then pending before the Honorable Judge Amy Totenberg.[5]  (*Id*. at 7-9.)  The Court

---

[5]     In the December 2015 final judgment in the SEC action, Movant was ordered to pay $19,790.00 in disgorgement.  J., *Megalli*, No. 1:13-cv-3783-AT.

AO 72A
(Rev.8/8
2)

imposed a twelve month and one day term of imprisonment.  (*Id*. at 28.)  The record does not show that Movant appealed.

**B.   Parties' Arguments**

Movant now argues that his conviction is subject to collateral attack because, after he was sentenced, the Second Circuit Court of Appeals in *Newman* modified the law so that the facts underlying Movant's guilty plea no longer establish the crime for which he was charged.  (Mov't Mem. at 2-4, ECF No. 40-1 and ECF No. 44.)[6]  Movant states that under *Newman*, (1) the personal benefit to the insider/tipper must be a tangible economic benefit and (2) the remote tippee (Movant) must actually know that the insider disclosed confidential information in exchange for such benefit.  (Mov't Mem. at 3-4.)  Movant contends that under *Newman* – which he asserts is binding on this Court as an extension of *Dirks v. SEC*, 463 U.S. 646 (1983) – the guilty plea colloquy and factual proffer were deficient and his guilty plea is invalid (1) because he was not subjectively aware that Mr. Martin was providing him with  information obtained from a Carter's insider who had provided confidential information in exchange for a personal benefit, an essential element under *Newman*, and (2) because

---

[6]     Movant pleaded guilty on November 14, 2013, and *Newman* was decided on December 10, 2014.

AO 72A
(Rev.8/8
2)

the insider's benefit was not " 'a potential *gain of a pecuniary or similarly valuable nature.' " (Mov't Mem. at 3, 5, 16-27 (quoting *Newman*, 773 F.3d at 452).)

Movant asserts that the collateral-review waiver does not apply because he is challenging the validity of his  plea.[7]  (Mov't Mem. at 7-30.)  Movant asserts that he overcomes his procedural default[8] because *Newman* is so unprecedented as to provide cause for failure to raise the issue earlier and because he was prejudiced as a result of being deprived of a voluntary and intelligent plea.  (Mov't Mem. at 31-34.)  Movant further asserts that he overcomes his procedural default by showing actual innocence under the standard announced in *Newman*.  (Mov't Mem. at 34-41.)[9]

---

[7]     Movant, who is counseled, specifically states that his § 2255 motion is not premised on ineffective assistance of counsel.  (Mov't Mem. at 9 n.2.)  Accordingly, he does not raise a claim that his guilty plea is invalid based on ineffective assistance of counsel but raises, for the first time on collateral review, a claim that his guilty plea is invalid.

[8]     Movant indicates that he procedurally defaulted the matter by failing to litigate his claims before his conviction.  (Mov't Mem. at 30.)  Although Movant does not clearly address his procedural default in relation to his failure to challenge his guilty plea on appeal, the Court broadly construes his procedural-default argument to apply to his default on appeal.

[9]     In his memorandum presentation on actual innocence and in his reply, Movant extensively reviews the facts and argues that they do not support the additional elements of insider trading as announced in *Newman*.  (Mov't Mem. at 34-41; Mov't Reply at 26-36, ECF No. 52.)  Movant's assertion of actual innocence is based on the alleged change in controlling law (*Newman*), which is non-binding and has been

The government argues that Movant's claims are barred by his valid collateral-review waiver and by procedural default, which he fails to overcome.  (Resp't Resp. at 34-69, ECF No. 47.)   The government further asserts that in his sentencing memorandum, Movant presented as a mitigating consideration the fact that he was waiving his *Newman* defense.  (*Id*. at 41.)

In reply, Movant asserts that the Court has jurisdiction to hear a challenge to the guilty plea for the first time on collateral attack.  (Mov't Reply at 9-13, ECF No. 52 (citing *Bousley v. United States*, 523 U.S. 614 (1998); *Davis v. United States*, 417 U.S. 333 (1974)).)  In asserting his lack of criminal liability (i.e., actual innocence), Movant states that he "does not contest that he relied on Carter's inside information, knowing or consciously avoiding the knowledge that it had been imparted to Martin in breach of an underlying fiduciary duty owed to Carter's by someone with whom Martin

---

abrogated.  For clarity and in light of the extensive review of the evidence by both parties, the Court stresses that – absent a change in controlling law that warrants a finding of a fundamental miscarriage of justice – actual innocence cannot be shown by a mere challenge to the sufficiency of the evidence for the crime as charged.  *See Schlup*, 513 U.S. at 324 (requiring new evidence); *Morris v. United States*, No. 2:13CV240-MHT, 2015 WL 5735649, at *6 (M.D. Ala. Sept. 30, 2015) ("[T]he arguments . . . do not point to 'new reliable evidence' of innocence, but instead concern the sufficiency and weight of the evidence presented at trial.  Such arguments do not . . . satisfy the *Schlup* standard.").

11

had been in contact prior to communicating with [Movant.]"[10] (*Id.* at 26-27.) Movant, however, asserts that he did not admit that the Carter's insider/tipper received a quantifiable, pecuniary benefit or that Movant was aware of the substance of that benefit (as required under *Newman*). (Mov't Reply at 27.)[11]

Movant obtained a stay in order that the Court could consider the United States Supreme Court's resolution of *Salman* – which raised remote-tippee-liability issues involved in *Newman*. (Mot. to Stay, ECF No. 54.) As indicated earlier, *Salman* has been decided, and *Newman* has been abrogated. In his supplemental brief, Movant argues that his § 2255 motion is removed from the purview of the United States Supreme Court's *Salman* decision. (Suppl. Br. at 4, ECF No. 63.) Movant argues that *Salman* addressed only a narrow set of facts – the giving of inside information to

---

[10]     *See supra* note 4.

[11]     In defending his reliance on *Newman*, Movant also asserts that it offends due process that a claim should be treated differently based on an "accident of geography." (Mov't Reply at 7-8.) This Court is aware of no authority holding that due process is violated when a district court does not follow authority from another circuit. *See Roberts v. Holder*, 745 F.3d 928, 933 (8th Cir. 2014) ("Disagreements among the courts of appeal, or between an agency and one or more of the courts of appeal, will not by itself create an equal protection violation."); *Habibi v. Holder*, 673 F.3d 1082, 1088 (9th Cir. 2011) ("No court has ever held that the mere existence of a circuit split on an issue of statutory interpretation violates due process or equal protection . . . .").

AO 72A
(Rev.8/8
2)

trading *relatives* when the remote tippee knew the identity of the tipper/insider.  (Suppl. Br. at 3-5.)  Movant again asserts that the tipper/insider must personally benefit from the disclosure of information to non-family and that the second-level tippee must be aware of the insider's benefit.  (*Id*. at 6-10.)

## C.   Law and Recommendation

### 1.   *Newman*

As discussed further below, Movant's challenge to the validity of his guilty plea fails based on his procedural default of his claim and his failure to overcome that default.  However, in light of the time and effort invested by Movant on *Newman*, the Court observes that notwithstanding *Newman* (and its subsequent abrogation by the United States Supreme Court in *Salman*), Eleventh Circuit law on insider trading remains as it was when Movant pleaded guilty.

Under Eleventh Circuit precedent, insider trading liability under § 78j(b) and 17 C.F.R. § 240.10b-5 is based on a misappropriator breaching a duty of loyalty and confidentiality owed to the source of the confidential information.  *S.E.C. v. Yun*, 327 F.3d 1263, 1271 (11th Cir. 2003).  In determining liability,

> the initial inquiry is whether there has been a breach of duty by the insider.  This requires courts to focus on objective criteria, i.e., whether the insider receives a direct or indirect personal benefit from the

13

disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings. . . . There are objective facts and circumstances that often justify such an inference.  For example, there may be a relationship between the insider and the recipient that suggests a quid pro quo from the latter, or an intention to benefit the particular recipient.  **The elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend.  The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient**.

*Dirks*, 463 U.S. at 663-64 (emphasis added).  Any requirement that "the tipper must also receive something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends, *Newman*, 773 F.3d[] at 452, is inconsistent with *Dirks*." *Salman*, _ U.S. at _, 137 S. Ct. at 428.  A tipper's gift of inside information to a trading relative or friend affords the tipper a personal benefit because the tipper has given valuable information and it can be inferred that the tipper meant to provide the equivalent of a cash gift, and the tipper has, thus, breached his duty of trust and confidence.  *Id.*

A tippee's duties are derivative from the insider's duties, and a tippee is liable for "trading on the basis of material nonpublic information if the inside tipper breached a fiduciary duty in disclosing to the tippee."  *S.E.C. v. Adler*, 137 F.3d 1325, 1333 (11th Cir. 1998).

14

> The tippee acquires the tipper's duty . . . if the tippee knows the information was disclosed in breach of the tipper's duty, and the tippee may commit securities fraud by trading in disregard of that knowledge. . . . [A] tippee's liability for trading on inside information hinges on whether the tipper breached a fiduciary duty by disclosing the information.  A tipper breaches such a fiduciary duty, we held, when the tipper discloses the inside information for a personal benefit.  And, we went on to say, a jury can infer a personal benefit – and thus a breach of the tipper's duty – where the tipper receives something of value in exchange for the tip or 'makes a gift of confidential information to a trading relative or friend.'  [*Dirks*, 463 U.S. at 664].

*Salman*, _ U.S. at _, 137 S. Ct. at 423.  Thus, "a tippee is liable if (1) an insider discloses inside information to (2) a tippee that knows, should know, or consciously avoids the knowledge (3) that the insider breached a fiduciary duty (i.e. received a benefit), and (4) still trades on the inside information."  *Megalli*, 157 F. Supp. 3d at 1247 (citing *Yun*, 327 F.3d at 1269-70).

There is no change in Eleventh Circuit law that impacts the application of the law of procedural default.  *See Davis*, 417 U.S. at 347, and discussion below.

15

### 2.   **Movant's Challenge to his Guilty Plea**

A guilty plea and any included appeal waiver must be knowing and voluntary in order to be constitutionally valid.  *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).  As a general rule, however, an appeal waiver does not bar a challenge to the validity of a guilty plea and waiver.  *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284-85 (11th Cir. 2015) (discussing appeal and collateral review waiver and stating that ineffective-assistance challenge to guilty plea should be raised in § 2255 motion); *United States v. Sosa*, 782 F.3d 630, 636 (11th Cir. 2015) (stating that "the appeal waivers, even if enforceable, did not govern Defendants' claims that their guilty pleas were not knowing and voluntary"); *see also United States v. Anaya-Medina*, 558 Fed. Appx. 947, 950-51 (11th Cir. Mar. 11, 2014) (finding that waiver did not bar challenge on direct appeal to the voluntary and knowing nature of plea based on alleged misstatement of the elements and insufficient factual basis).

Although the Court in § 2255 proceedings may "consider" a guilty-plea challenge that is raised for the first time, that consideration is through the lens of the rules on procedural default.  *See Bousley*, 523 U.S. at 616 (reviewing guilty-plea challenge that had been procedurally defaulted on direct appeal and holding that the movant "may be entitled to a [§ 2255] hearing on the merits of it if he makes the

16

necessary showing to relieve the default"). As stated by the court in *Bousley*, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Id.*, 523 U.S. at 614 (quotation marks and citation omitted).

Here, Movant could have pursued a challenge to the validity of his guilty plea on direct review. He did not. Accordingly, collateral review is now barred, absent a showing of cause and prejudice or a showing of actual innocence. *See McKay*, 657 F.3d at 1196. Although it is true that cause may be provided by a "claim that 'is so novel that its legal basis is not reasonably available to counsel[,]'" Movant's claim does not qualify. *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The Court rejects Movant's argument that his claims were so novel as to be unavailable until after *Newman* was decided. (*See* Mov't Reply at 20.) Movant's current arguments were reasonably available to Movant to preserve and raise on appeal if he had wished to do so, just as the arguments were available to the litigants in *Newman*.[12] Further, an argument that default should be excused because a challenge

---

[12]    In contrast to Movant, the defendants in *Newman* directly appealed their convictions and challenged the elements that must be proven for insider trading. *Newman*, 773 F.3d at 442-44. The same arguments were available to Movant. (*See*

would have been futile fails.  In attempting to overcome a procedural default, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' " *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

Further, the Court rejects Movant's assertion of actual innocence, based on a change in allegedly controlling authority, i.e., *Newman*.  Generally, a defendant who can show that he has been convicted for an act that the law – as changed by the circuit court for the circuit of his conviction – no longer makes criminal, shows a fundamental defect that is properly raised in a collateral proceeding.  *Davis*, 417 U.S. at 347.[13]

_____

Plea Tr. at 13 (government discussing issue percolating in the Second Circuit on whether remote tippee must know original tipper received a personal benefit); Mov't Sentencing Mem. at 57-60 (Movant discussing *Newman* issues); Resp't Ex. 1, Mem. at 23, ECF No. 50 (Movant discussing in a pre-plea memorandum the issues in *Newman*)).  Additionally, Movant argued in his sentencing memorandum that his waiver of *Newman* issues should weigh in his favor at sentencing. (Mov't Sentencing Mem. at 57-60.)

[13]     In *Davis*, on petition for *certiorari* from the Ninth Circuit Court of Appeals' decision affirming the petitioner's conviction, the United States Supreme Court held as follows –

In this case, the petitioner's contention is that [the Ninth Circuit's application of the law in a case decided] after his conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order.  If this contention is well taken, then Davis' conviction and

Movant's attempt to show a fundamental defect or actual innocence fails because the case on which he relies, *Newman*, is not binding precedent in this Court and because *Newman* has been abrogated. *Salman*, _ U.S. at _, 137 S. Ct. at 428. *Newman* simply does not change Eleventh Circuit law or establish a different standard on insider trading liability within the Northern District of Georgia. *See United States v. Veal*, 322 F.3d 1275, 1278 (11th Cir. 2003) ("[I]t is important to note that we are in no way bound by a decision from the Second Circuit Court of Appeals.").  Law from another circuit does not represent an "intervening change in the law that could serve as a basis for an equitable exception argument in this Court that [Movant] stands convicted of an act that the law does not make criminal." *Phillips v. United States*, 734 F.3d 573, 585 (6th Cir. 2013) (internal quotation marks and citation omitted) (rejecting attempt to use law from another circuit to show actual innocence).

―――――――――

punishment are for an act that the law does not make criminal.  There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under [§] 2255.  Therefore, although we express no view on the merits of the petitioner's claim, we hold that the issue he raises is cognizable in a § 2255 proceeding.

*Davis*, 417 U.S. at 346-47.

"Surely the actual innocence exception, so narrowly construed that it has historically been applied with great caution and only in the case of a fundamental miscarriage of justice, cannot be so broadly defined as to be premised upon changes in statutory interpretation that may be appealing in argument, but are certainly not binding.  [Movant] has failed to identify a binding holding of the Supreme Court or [Eleventh Circuit] interpreting [the elements of insider trading], a necessary component of his entitlement to seek an actual innocence equitable exception to his [procedurally barred claim]."  *Id*.  In sum, Movant fails to overcome his procedural default, and his § 2255 challenge to the validity of his guilty plea is barred.

## IV.   **Certificate of Appealability (COA)**

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

> When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid

20

claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Damren v. Florida*, 776 F.3d 816, 820 (11th Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 136 S. Ct. 830 (2017).

It is recommended that a COA is unwarranted because it is not debatable that Movant procedurally defaulted his claim that his guilty plea is invalid and that he has not overcome his default. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## V.   Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion, [Doc. 40], to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

21

**IT IS SO RECOMMENDED and DIRECTED**, this  3d  day of  July    , 2017.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)