FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

SEP 2 5 2017

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| MARK MEGALLI, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:13-CR-0442-RWS-AJB-1 |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | CIVIL FILE NO. |
| | : | 1:15-CV-1433-RWS-AJB |

## ORDER ADOPTING MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

The matter is before the Court on Magistrate Judge Alan J. Baverman's Final Report and Recommendation ("R&R") [64], which recommends that Movant's counseled 28 U.S.C. § 2255 motion [40] and a certificate of appealability (COA) be denied. Movant has filed objections [67] to the R&R.

In reviewing a Magistrate Judge's Report and Recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and "need only satisfy itself that there is no clear error on the

face of the record in order to accept the recommendation," Fed. R. Civ. P. 72, advisory committee note, 1983 Addition, Subdivision (b).

## I.   **Discussion**

### A.   **Background**[1]

This action involves a violation of securities law by a remote tippee. A tippee may not trade on material nonpublic information from an insider "when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach." Dirks v. SEC, 463 U.S. 646, 660 (1983). In determining tippee liability,

> the initial inquiry is whether there has been a breach of duty by the insider. This requires courts to focus on objective criteria, i.e., whether the insider receives a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings. . . . There are objective facts and circumstances that often justify such an inference. For example, there may be a relationship between the insider and the recipient that suggests a quid pro quo from the latter, or an intention to benefit the particular recipient. The elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend. The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient.

---

[1]   The Court's summary of the proceedings reflects much of the Magistrate Judge's language in the Report and Recommendation, with adjustments as necessary for the purpose of *de novo* review.

2

Id. at 663-64. "Dirks specifies that when a tipper gives inside information to 'a trading relative or friend,' the jury can infer that the tipper meant to provide the equivalent of a cash gift." Salman v. United States, _ U.S. _, _, 137 S. Ct. 420, 428 (2016) (hereinafter Salman).[2] A tipper breaches his fiduciary duty "when the tipper discloses the inside information for a personal benefit. And, . . . a jury can infer a personal benefit – and thus a breach of the tipper's duty – where the tipper receives something of value in exchange for the tip or 'makes a gift of confidential information to a trading relative or friend.'" Id., _ U.S. at _, 137 S. Ct. at 423 (quoting Dirks, 463 U.S. at 664)). The issue raised by Movant in this action is whether, based on the Second Circuit decision in Newman, an insider/tipper's personal benefit can be inferred (or a tippee's knowledge thereof can be based on conscious avoidance) absent a familial or close relationship between tipper and tippees. See United States v. Newman, 773 F.3d 438 (2d Cir. 2014), cert. denied, _ U.S. _, 136 S. Ct. 242 (2015), and abrogated, Salman, _ U.S. at _, 137 S. Ct. at 428.

Movant was charged by information with one count of conspiracy to commit securities fraud by, among other things, causing the purchase and sale of "Carter's

---

[2] The underlying Ninth Circuit decision is United States v. Salman, 792 F.3d 1087 (9th Cir. 2015) (hereinafter Salman I), cert. granted in part, _ U.S. _, 136 S. Ct. 899, and aff'd, Salman.

3

securities on the basis of . . . certain Inside Information provided to him by Eric T.

Martin, knowing and consciously avoiding the knowledge that the Inside Information

had been obtained by Martin from a Carter's insider[, Richard T. Posey,] in violation

of the insider's duties of trust and confidence to Carter's," in violation of 15 U.S.C.

§§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5. (Information at 1, 4, 6, ECF No. 1

(tracking the language of § 240.10b-5.) Movant pleaded guilty to count one as

charged. (Guilty Plea and Plea Agreement, ECF No. 3-1.)[3]

At the plea hearing, the government set forth the following –

[T]he Government would be required to prove beyond a reasonable
doubt, first, in connection with the purchase or sale of securities, the
Defendant employed a device, scheme or artifice to defraud, or engaged
in an act, practice or course of business that operated, or would operate,
as a fraud or deceit upon persons; second, the Defendant acted willfully,
knowingly and with the intent to defraud; and third, the Defendant used
or caused to be used any means or instrumentalities of transportation or
communication in interstate commerce or use of the mails in furtherance
of the scheme.

. . . . In order to satisfy the first two elements of that test that I just
described in an insider trading case, the Government is required to prove,
first, that the original tipper, in this case Richard Posey, possessed

---

[3] The Securities and Exchange Commission (SEC) brought a civil enforcement
action against Movant, and the final judgment was entered therein on December 17,
2015. J., Sec. & Exch. Comm'n v. Megalli, No. 1:13-cv-3783-AT (N.D. Ga. Dec. 17,
2015), ECF No. 66; see also Sec. & Exch. Comm'n v. Megalli, 157 F. Supp. 3d 1240
(N.D. Ga. 2015) (ruling on motions for summary judgment in 1:13-cv-3783).

material nonpublic information regarding a publicly traded company; second, the original tipper, Rick Posey, disclosed this information to the intermediate tippee, in this case Eric Martin, who disclosed it to the remote tippee, in this case [Movant]; third, the remote tippee, [Movant], traded in securities on the basis of the information; and fourth, the original tipper, Rick Posey, breached a fiduciary duty to the source of the information by disclosing it to the intermediate tippee, and the remote tippee, [Movant], knew that the original tipper had violated a fiduciary duty by providing the information to the intermediate tippee.

Now, in the Second Circuit there's currently an issue percolating[4] that's related to some of the insider trading prosecutions up there as to whether there is a fifth element that the remote tippee in [Movant's] position must also know that the original tipper received a personal benefit in exchange for disclosing the information to the intermediate tippee. The Government's position is that this element is not required. Nevertheless, the parties have discussed it; and the Government's position is that as a factual matter – first, as a legal matter, it's not required. As a factual matter, if it was required, the Government could prove it based on circumstantial evidence that [Movant] knew or consciously avoided the knowledge that Martin was meeting with friends and contacts at Carter's and had friendships with one or more persons at Carter's, his former employer. Finally, just so the Court is aware, conscious avoidance or deliberate ignorance is sufficient to articulate the knowledge and intent elements under this, under the securities fraud statutes that we're discussing.

(Plea Hr'g Tr. at 11-14, ECF No. 9.) Movant stated that he understood. (Id. at 14.)

The government stated that if the case went to trial the evidence would show

the following: (1) Mr. Posey disclosed insider information to Mr. Martin in exchange

---

4  The issues percolating in November 2013 were decided in <u>Newman</u> on December 10, 2014.

AO 72A
(Rev.8/82)

for reciprocal stock tips on other public companies, future networking opportunities, friendship, and other tangible and intangible benefits and (2) Mr. Martin provided the insider information to Movant, who used the information to sell and short Carter's common stock – knowing that Mr. Martin had recently left Carter's and was meeting, speaking, and socially interacting with a Carter's insider[5] and knowing or consciously avoiding that Mr. Martin was obtaining the information from the Carter's insider in breach of the insider's duties. (Id. at 17-19.) Movant presented no significant disagreement on the facts,[6] and the Court accepted his guilty plea. (Id. at 22-25, 31.)

In his sentencing memorandum, Movant referred to the then ongoing litigation in Newman and pointed out that he, Movant, had waived the possibility of requiring the government to prove (1) a breach/personal-benefit in regard to the insider and

---

[5] The government stated that the insider, Posey (whose name had been unknown to Movant) and Mr. Martin had developed a personal and professional relationship which included travel, golf outings, lunches, work events, and social events, and which continued after Mr. Martin left Carter's. (Plea Hr'g Tr. at 18-19.)

[6] See Megalli, 157 F. Supp. 3d at 1248 ("[Movant] concedes that in his guilty plea he admitted that he made trades on 'the basis of, in whole or in part, certain material, non-public information provided by Eric Martin . . . knowing and consciously avoiding the knowledge that the material, non-public information had been obtained by Martin from a Carter's insider in violation of the insider's duties of trust and confidence to Carter's.'" (citation omitted)); see also Def. Mark Megalli's Answer at 2, S.E.C. v. Megalli, No. 1:13-cv-3783-AT (N.D. Ga. Dec. 17, 2015), ECF No. 13.

AO 72A
(Rev.8/82)

(2) Movant's knowledge of that breach/personal-benefit. (Mov't Sentencing Mem. at 57-60, ECF No. 26.) Movant explained that he had not improperly waived a legal defense but that the government's ability to prove knowledge of benefit "is hardly a foregone conclusion, which means it should factor as a mitigating circumstance in the Court's assessment of a reasonable sentence in this case." (Id. at 60.)

At sentencing, the government requested a sentence at the low end of the forty-one to fifty-one month guidelines range, stating, among other things that Movant had made a "tremendous demonstration of acceptance of responsibility." (Sentencing Tr. at 4, ECF No. 31.) Movant, through counsel, admitted – "[c]onscious avoidance . . . is equally as culpable as actual knowledge but I'm here to tell you that we also have actual knowledge in this case" – and then asked the Court to consider that jail time was not the end-all of deterrence as he was facing significant liability in the SEC action ($3.17 million in disgorgement) then pending before the Honorable Judge Amy Totenberg.[7] (Id. at 7-9.) Movant took responsibility for his actions as wrong and life-altering – "I knew it was wrong and I should not have traded on it . . . . We're paying a tremendous price . . . financially, emotionally, psychologically. . . . [W]e're paying

---

[7] In the December 2015 final judgment in the SEC action, Movant was ordered to pay $19,790.00 in disgorgement. J., Megalli, No. 1:13-cv-3783-AT.

a tremendous amount for my mistakes and I want to apologize to my family in particular for putting them into this position." (Id. at 22.) The Court imposed a twelve month and one day term of imprisonment. (Id. at 28.) The record does not show that Movant appealed.

## B.  **Motion to Vacate**

In his motion to vacate, Movant argues that his conviction is subject to collateral attack because, after he was sentenced, the Second Circuit Court of Appeals in <u>Newman</u> modified the law so that the facts underlying Movant's guilty plea no longer establish the crime for which he was charged. (Mov't Mem. at 2-4 (sealed un-redacted version), ECF No. 44.)[8] Movant states that under <u>Newman</u>, (1) the personal benefit to the insider/tipper must be a tangible economic benefit and (2) the remote tippee (Movant) must actually know that the insider disclosed confidential information in exchange for such benefit. (Id. at 3-4.) Movant contends that under <u>Newman</u> – which he asserts is binding on this Court as an extension of <u>Dirks</u> – the guilty plea colloquy and factual proffer were deficient and his guilty plea is invalid (1) because he was not subjectively aware that Mr. Martin was providing him with information

---

[8] Movant pleaded guilty on November 14, 2013, and <u>Newman</u> was decided on December 10, 2014.

obtained from a Carter's insider who had provided confidential information in exchange for a personal benefit, an essential element under <u>Newman</u>, and (2) because the insider's benefit was not "'a potential *gain of a pecuniary or similarly valuable nature.*'" (Mov't Mem. at 3, 5, 16-27 (quoting <u>Newman</u>, 773 F.3d at 452).)

Movant asserts that his challenge to his guilty plea is not barred by procedural default (1) because <u>Newman</u> is so unprecedented as to provide cause for failure to raise his claim earlier, which resulted in prejudice as he was deprived of a voluntary and intelligent plea, and (2) because he shows actual innocence under the standard announced in <u>Newman</u>. (Mov't Mem. at 30-41.)

The government argues, among other things, that Movant's claims are barred by procedural default, which he fails to overcome, and additionally comments that, in his sentencing memorandum, Movant presented as a mitigating consideration the fact that he was waiving his <u>Newman</u> defense. (Resp't Resp. at 34-69, ECF No. 47.)

In reply, Movant asserts that the Court has jurisdiction to hear a challenge to the guilty plea for the first time on collateral attack. (Mov't Reply at 9-13, ECF No. 52 (citing <u>Bousley v. United States</u>, 523 U.S. 614 (1998); <u>Davis v. United States</u>, 417 U.S. 333 (1974)).) In asserting his lack of criminal liability (i.e., actual innocence), Movant states that he "does not contest that he relied on Carter's inside information,

knowing or consciously avoiding the knowledge that it had been imparted to Martin in breach of an underlying fiduciary duty owed to Carter's by someone with whom Martin had been in contact prior to communicating with [Movant.]" (Id. at 26-27.) Movant, however, asserts that he did not admit that the Carter's insider/tipper received a quantifiable, pecuniary benefit or that Movant was aware of the substance of that benefit (as required under Newman). (Mov't Reply at 27.)

Movant obtained a stay in order that the Court could consider the United States Supreme Court's resolution of a case out of the Ninth Circuit, Salman I. Movant contended that the matter on review in Salman I went directly to the merits of his petition as it involved the Newman issue of whether essential insider trading elements included (1) that the insider must receive a pecuniary or similarly tangible benefit for his disclosure and (2) that the remote-tippee must be aware of the substance of the exchange. (Mot. to Stay at 1-7, ECF No. 54.)

After Salman was decided, Movant filed a supplemental brief in which he contends that the facts in Salman are "far removed from" and in "stark contrast" to the facts in his case and that his § 2255 motion is removed from the purview of Salman. (Suppl. Br. at 2-4, ECF No. 63.) Movant states that Salman addressed only the giving of inside information to trading *relatives* when the remote tippee knew the identity of

10

the tipper/insider and that, therefore, his <u>Newman</u> argument is not foreclosed by <u>Salman</u>. (<u>Id.</u> at 4-12.)[9] Movant states that, absent a familial or close relationships between the tipper and tippees, there is no high probability of a benefit which can be inferred and a remote tippee cannot be held liable based on conscious avoidance of such "benefit." (<u>Id.</u> at 11-12.)

### C.  The Magistrate Judge's Recommendation

The Magistrate Judge found, under <u>Bousley</u>, that Movant's challenge to his guilty plea was procedurally defaulted by his failure to challenge it on direct review and that he must overcome his default in order to obtain review. (R&R at 17, ECF No. 64); <u>see</u> <u>Bousley</u>, 523 U.S. at 616 (reviewing guilty-plea challenge that had been procedurally defaulted on direct appeal and holding that the movant "may be entitled to a [§ 2255] hearing on the merits of it if he makes the necessary showing to relieve

---

[9] Movant argues that the tippee's awareness of the insider's benefit is required because the United States Supreme Court declined "to disturb the Second Circuit's reversal in <u>Newman</u> of the underlying trader convictions based on the government's failure to prove the traders' knowledge of insider benefit." (Suppl. Br. at 6.) Movant's point is less than clear, but the Court emphasizes that when the United States Supreme Court in reviewing <u>Salman I</u> from the Ninth Circuit declined "to disturb the Second Circuit's reversal in <u>Newman</u> of the underlying trader convictions based on the government's failure to prove the traders' knowledge of insider benefit," (Suppl. Br. at 6), it *did not* thereby issue any kind of binding holding on a <u>Newman</u> issue which was not before the Supreme Court.

11

the default"). The Magistrate Judge found that Movant's attempt to show cause by asserting that his argument was novel failed because his "current arguments were reasonably available to Movant to preserve and raise on appeal if he had wished to do so, just as the arguments were available to the litigants in <u>Newman</u>." (<u>Id.</u>) The Magistrate Judge noted as follows –

> In contrast to Movant, the defendants in <u>Newman</u> directly appealed their convictions and challenged the elements that must be proven for insider trading. <u>Newman</u>, 773 F.3d at 442-44. The same arguments were available to Movant. (<u>See</u> Plea Tr. at 13 (government discussing issue percolating in the Second Circuit on whether remote tippee must know original tipper received a personal benefit); Mov't Sentencing Mem. at 57-60 (Movant discussing <u>Newman</u> issues); Resp't Ex. 1, Mem. at 23, ECF No. 50 (Movant discussing in a pre-plea memorandum the issues in <u>Newman</u>)). Additionally, Movant argued in his sentencing memorandum that his waiver of <u>Newman</u> issues should weigh in his favor at sentencing. (Mov't Sentencing Mem. at 57-60.)

(R&R at 17-18 n.12.) The Magistrate Judge found that Movant's attempt to overcome his default by showing actual innocence failed because <u>Newman</u> was not binding precedent in this Court and had been abrogated. (<u>Id.</u> at 19.)

## D.   <u>Objections and Ruling on Objections</u>

In his objections movant states that the R&R is "fundamentally objectionable because, at its core, it posits that the U.S. Supreme Court abrogated [<u>Newman</u>] in deciding <u>Salman</u> . . . ." (Objections at 1, ECF No. 67.) Movant states that the R&R

12

incorrectly determined that <u>Salman</u> rejected <u>Newman</u>'s determination that a personal benefit could not be inferred based merely on a personal relationship absent "proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." (Objections 1-3 (quoting <u>Newman</u>, 773 F.3d at 452).) Movant asserts that, to the contrary, <u>Salman</u> decided only that a personal benefit could be inferred when the insider/tipper and tippee are related by blood or marriage and the tippee has direct knowledge of the source of information on which they relied. (<u>Id.</u> at 1-2.) Movant sets forth four objections, which are addressed separately below.

## 1. **First Objection**

In his first objection, Movant asserts that <u>Salman</u> does not abrogate <u>Newman</u>, that it endorses <u>Dirks</u>, and that it ratifies and endorses <u>Newman</u>'s amplified application of <u>Dirks</u>, an amplification that requires additional proof in regard to the insider/tipper benefit for tipping chains that involve unrelated parties when there is no meaningfully close personal relationship, as in Movant's case. (Objections at 4-7.) Movant asserts that <u>Newman</u> and the <u>Salman</u> ratification of <u>Newman</u> entitle him to relief and show that his guilty plea to criminal insider trading was involuntary because

13

he did not plead guilty to the essential elements of an (1) insider benefit and (2) Movant's knowledge of that benefit. (Objections at 6.)

Although the Court in § 2255 proceedings may "consider" a guilty-plea challenge that is raised for the first time, that consideration is through the lens of the rules on procedural default. See Bousley, 523 U.S. at 616 (reviewing guilty-plea challenge that had been procedurally defaulted on direct appeal and holding that the movant "may be entitled to a [§ 2255] hearing on the merits of it if he makes the necessary showing to relieve the default"). When a claim has been procedurally defaulted, collateral review is barred, absent a showing of cause and prejudice or a showing of actual innocence. See McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011).

This objection fails. Movant's argument based on Newman simply does not demonstrate cause for his procedural default. Newman is not binding precedent. See United States v. Veal, 322 F.3d 1275, 1278 (11th Cir. 2003) ("[I]t is important to note that we are in no way bound by a decision from the Second Circuit Court of Appeals.").

Even if Newman were binding precedent, it has been abrogated, as discussed immediately below. Further, the United States Supreme Court in Salman endorsed

14

_Dirks_. It did not decide, or endorse, the _Newman_ amplification of _Dirks_. <u>See</u> <u>infra</u> I. D. 4.

The Second Circuit held in _Newman_ that in order to show an insider/tipper's breach of his fiduciary duty (disclosing inside information for a personal benefit), there must be evidence of a personal benefit – of a pecuniary or similarly valuable nature – to the insider/tipper, when the disclosure occurred between business associates or between family friends and there was no proof of a meaningfully close personal relationship. _Newman_, 773 F.3d at 452. The Ninth Circuit subsequently held in _Salman I_, (1) that additional evidence of a pecuniary or similar benefit is *not* required in order to show an insider/tipper's breach of their fiduciary duty by disclosing information for a benefit, when the disclosure occurs between family members, and (2) that a personal benefit could be inferred based on relationship between family members. _Salman I_, 792 F.3d at 1092-94. In reviewing _Salman I_, the United States Supreme Court found that to the extent that _Newman_ "held that the tipper must also receive something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends, . . . [the] requirement is inconsistent with _Dirks_." _Salman_, _ U.S. at _, 137 S. Ct. at 428 (quoting _Newman_, 773 F.3d at 452). The Supreme Court observed that the facts in _Salman I_ were in the heartland of the

<u>Dirks</u> gift rule pertaining to relatives. <u>Id.</u> at 429. Thus, there remained a question as to whether the Supreme Court's treatment of <u>Newman</u> necessarily foreclosed a <u>Newman</u> claim for a non-heartland relationship – a relationship that did not qualify as "meaningfully close personal relationship." <u>United States v. Bray</u>, 853 F.3d 18, 27 n.5 (1st Cir. 2017).

The Second Circuit has addressed that question, stating, "[w]e hold that the logic of <u>Salman</u> abrogated *Newman*'s 'meaningfully close personal relationship' requirement." <u>United States v. Martoma</u>, _ F. 3d _, _, No. 14-3599, 2017 WL 3611518, at *1 (2d Cir. Aug. 23, 2017).[10]

> The Supreme Court's decision in <u>Salman</u> explicitly rejected certain aspects of <u>Newman</u>. <u>See</u> 137 S. Ct. at 428. While the Supreme Court did not have occasion to expressly overrule <u>Newman</u>'s requirement that the tipper have a "meaningfully close personal relationship" with a tippee to justify the inference that a tipper received a personal benefit from his gift of inside information – because that aspect of <u>Newman</u> was not at issue in <u>Salman</u> – "[e]ven if the effect of a Supreme Court decision is 'subtle,' it may nonetheless alter the relevant analysis fundamentally enough to require overruling prior, 'inconsistent' precedent." <u>Doscher</u>, 832 F.3d at 378 (quoting <u>Wojchowski v. Daines</u>, 498 F.3d 99, 108 (2d Cir. 2007)).

---

[10] The Second Circuit Court of Appeals has allowed Martoma until October 6, 2017 in which to seek reconsideration. <u>See</u> <u>United States v. Martoma</u>, No. 14-3599 (2nd Cir. Aug. 23, 2017). The possibility of reconsideration does not change the result here, however, because <u>Newman</u> is not binding within the Eleventh Circuit.

16

We respectfully conclude that <u>Salman</u> fundamentally altered the analysis underlying <u>Newman</u>'s "meaningfully close personal relationship" requirement such that the "meaningfully close personal relationship" requirement is no longer good law.

. . . Nothing in <u>Salman</u>[] . . . supports a distinction between gifts to people with whom a tipper shares a "meaningfully close personal relationship". . . and gifts to those with whom a tipper does not share such a relationship.

<u>Martoma</u>, _ F. 3d at _, 2017 WL 3611518 at *1. Movant's first objection is overruled.

## 2. Second Objection

In his second objection, Movant, relying on <u>United States v. Peter</u>, 310 F.3d 709 (11th Cir. 2002), argues that the R&R's adherence to the doctrine of procedural default is error when the district court lacked jurisdiction to accept his guilty plea, a claim that cannot be procedurally defaulted. (Objections at 7-11.) Movant asserts that the facts underlying his guilty plea and the guilty plea colloquy are insufficient to support his securities fraud conviction in that there is nothing to support the essential elements of a benefit to the insider/tipper or Movant's knowledge of the benefit. (<u>Id.</u> at 10.) Movant argues that he could not waive his right to challenge a conviction based on conduct subsequently deemed to be a non-offense by an intervening change in law. (<u>Id.</u> at 10-11.)

17

The Court in <u>Peter</u> held that a challenge to the government's charge for a non-offense, though not contested at the time of his plea or on direct appeal, was not subject to procedural default because such challenge went to the district court's jurisdiction. <u>Peter</u>, 310 F.3d at 711, 713.

Here, Movant's attempt to switch to a jurisdictional challenge fails. <u>Newman</u>, the alleged intervening change in law (which is not binding in this Court), does not demonstrate that the information, to which Movant pleaded guilty in this Court, charged him with a non-offense. Movant does not otherwise show that the information to which he pleaded guilty charged him with a non-offense, and a review of the information shows that it tracks the applicable regulatory language related to securities manipulation and deception. <u>See</u> <u>United States v. Berger</u>, 188 F. Supp. 2d 307, 337 (S.D. N.Y. 2002) ("The Information adopts, almost word for word, the language of Rule 10b–5 to allege that Berger committed a securities violation. As a result, Berger's challenge merely goes to the merits of the Government's prosecution, not to the jurisdiction of the Court."). Movant fails to show that he was charged with a non-offense.

18

### 3.    Third Objection

In his third objection, Movant objects to the Magistrate Judge's finding that his argument based on <u>Newman</u> was not novel and was reasonably available at the time that Movant pleaded guilty. (Objections at 12-16.) Movant asserts that <u>Newman</u> was an "unprecedented change in controlling authority that has since been ratified by the Supreme Court." (<u>Id.</u> at 16.)

As stated earlier, collateral review is now barred, absent a showing of cause and prejudice or a showing of actual innocence, <u>see</u> <u>McKay</u>, 657 F.3d at 1196, and cause may be provided by a "claim that 'is so novel that its legal basis is not reasonably available to counsel,'" <u>Bousley</u>, 523 U.S. at 622 (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)). On *de novo* review, the Court agrees with the Magistrate Judge on this issue. <u>Newman</u> was not so novel that Movant could not have raised the <u>Newman</u> issues – of which he was aware – before the <u>Newman</u> opinion was issued. <u>See supra</u> I. C. (quoting R&R at 17-18 n.12).)

### 4.    Fourth Objection

In his fourth objection, Movant asserts that, the rejection of his claim of actual innocence is fundamentally objectionable because the R&R misapprehended that <u>Salman</u> abrogated <u>Newman</u> and mistakenly relied on <u>SEC v. Yun</u>, 327 F.3d 1263

(11th Cir. 2003).[11] (Objections at 16-23.) According to Movant, "the Supreme Court actually affirmed <u>Newman</u> with respect to (i) the standard for remote tippee liability in prosecutions involving, as in this case, ephemeral contractual or social contacts and (ii) the level of trader knowledge required if the underlying tips have been secured by more concrete consideration." (Objections at 17.) Movant asserts that he "is actually innocent of insider trading if the government is required to prove both a qualifying insider benefit and his culpable knowledge of the same." (<u>Id.</u> at 4.) Movant also argues that he should be granted a COA. (<u>Id.</u> at 23-25.)

As stated earlier, a showing of actual innocence can overcome a procedural default. <u>McKay</u>, 657 F.3d at 1196. A defendant who can show that he has been convicted for an act that the law (as changed by binding precedent, including the circuit court for the circuit of his conviction) no longer makes criminal, shows a fundamental defect that is properly raised in a collateral proceeding. <u>Davis</u>, 417 U.S.

---

[11] The Magistrate Judge's reference to <u>Yun</u>, which decided tippee liability for securities fraud under the misappropriation theory, did not work an error that changes the result in Movant's case, which involves securities fraud under the classical theory. The Magistrate Judge discussed, among other cases, <u>Dirks</u> and <u>Yun</u>. Further, <u>Yun</u> discusses <u>Dirks</u> and classical and misappropriation theory and states that "there is no reason to distinguish between a tippee who receives confidential information from an insider (under the classical theory) and a tippee who receives such information from an outsider (under the misappropriation theory)." <u>Yun</u>, 327 F.3d at 1276.

at 347;[12] see also Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime."); Phillips v. United States, 734 F.3d 573, 582-83 (6th Cir. 2013) (stating that actual innocence may be shown by pointing to an intervening change in binding precedent which demonstrates that the petitioner stands convicted based on actions that the law deems non-criminal). Law from another circuit, however, does not represent an "intervening change in the law that could serve as a basis for an equitable exception argument in

---

[12] In Davis, on petition for *certiorari* from the Ninth Circuit Court of Appeals' decision affirming the petitioner's conviction, the United States Supreme Court held as follows —

> In this case, the petitioner's contention is that [the Ninth Circuit's application of the law in a case decided] after his conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order. If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under s 2255. Therefore, although we express no view on the merits of the petitioner's claim, we hold that the issue he raises is cognizable in a § 2255 proceeding.

Davis, 417 U.S. at 346-47.

AO 72A
(Rev.8/82)

this Court that [Movant] stands convicted of an act that the law does not make criminal." Phillips, 734 F.3d at 585 (internal quotation marks and citation omitted) (rejecting attempt to use law from another circuit to show actual innocence).

Movant's final objection fails. As stated earlier, Newman is not binding in this Court. Further, the Supreme Court in Salman did not affirm Newman. The Newman decision was not, itself, before the Supreme Court. Accordingly, Newman remains non-binding precedent, which has been abrogated by Salman and has now been further abrogated by the Second Circuit. Salman, which is binding in this Court, reinforced Dirks, to which the Eleventh Circuit and this Court adhere and adhered at the time Movant pleaded guilty. Movant does not show that Salman modified the Dirks principle. Dirks is not new law, and Movant shows no cause for his default of an argument based on Dirks.

## II.    **Conclusion**

On *de novo* review of Movant's objections, the Court agrees with the Magistrate Judge and otherwise finds no clear error in the R&R. Further, a COA is not warranted. Not all decisions resolving a motion to vacate, which peripherally involve complex areas of law, are themselves complex or reasonably debatable. Such is the case here, based on Movant's procedural default.

22

The Court agrees with the Magistrate Judge that Movant presents no reasonably debatable issue that warrants a COA.

Accordingly, **IT IS ORDERED** that Plaintiff's objections [67] are overruled and that the Magistrate Judge's Report and Recommendation [64] is **ADOPTED** as the Order of the Court. **IT IS ORDERED** that the motion to vacate [40] is **DENIED and** that a certificate of appealability is **DENIED**.

**SO ORDERED** this 25th day of September, 2017.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)